THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* JERRY IKIN, Defendant-Appellant.

(No. 55896;

First District (4th Division)—June 27, 1973.

Irving Birnbaum, of Chicago, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Harvey N. Levin, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from a judgment entered in an action brought by the City of Chicago for violation of the Disorderly Conduct Ordinance, chapter 193, section 1(b) of the Municipal Code of Chicago. The court, without a jury, found the defendant guilty of the charge and fined him $250.

The Municipal Code of Chicago, chapter 193, section 1 provides as follows:

"A person commits disorderly conduct when he knowingly:

\* \* \*

(b) Does or makes any unreasonable or offensive act, utterance, gesture or display which, under the circumstances, creates a clear and present danger of a breach of peace or imminent threat of violence; \* \* \*."

The issues presented for review:

1. Whether there was sufficient evidence to sustain a finding of guilty under the disorderly conduct ordinance.
2. Whether the facts complained of constitute a violation of Section 193—1(b) of the Municipal Code of Chicago.
3. Whether a fine of $250 was excessive under the circumstances of this case.

At approximately 11:00 A.M., on February 2, 1970, the defendant, Jerry Ikin, rang the doorbell of the complainant, Anita Gordon. Mrs. Gordon answered the doorbell and the defendant informed her that he

was a neighbor and he was warning people in the neighborhood that there was a "peeping tom" in the vicinity. Mrs. Gordon thanked him and began closing the door, but the defendant stopped her and began describing the "peeping tom." During this description, he started taking out a cigarette, but did not have a match. Mrs. Gordon left the door to get him a match and at that time defendant entered the apartment uninvited.

The defendant took off his coat, sat down and proceeded to tell Mrs. Gordon about his observations in the neighborhood. It was his practice to use binoculars. During the course of his narration of neighborhood activity, the complainant was unable to get defendant to leave. The defendant asked Mrs. Gordon if he could kiss her and she refused. He took the liberty of pinching her cheek. On three separate occasions she asked the defendant to leave but he ignored her requests. Finally, complainant heard the milkman and she opened the door and started talking with the milkman. The defendant then left immediately. Mrs. Gordon called the police. Defendant was arrested and charged with a violation of the City's disorderly conduct ordinance, Municipal Code of Chicago, chapter 193, section 1(b). The defendant was found guilty and fined $250 after a bench trial on June 15, 1970.

The record contains ample evidence to support the judgment of the trial court. The defendant's conduct was so outrageous that it would reasonably produce a threat of violence.

Defendant-Appellant claims he was in complainant's apartment at her invitation and that she failed to call for assistance. Under the circumstances of the case as they appeared to complainant at that time, it would not have been prudent or feasible, since she knew no one was around at that hour of the day.

Neither common sense nor any rule of law requires complaining witness to place herself in jeopardy. The trial judge pointed out that this course of action might very well have rendered her susceptible to other criminal acts being perpetrated upon her. There is ample justification, indeed wisdom, behind her failure to call out for help.

In the case of *City of Chicago v. Wender* (1970), 46 Ill.2d 20, 262 N.E.2d 470, which arose out of the 1968 convention disturbance, the Supreme Court reversed a disorderly conduct conviction. There the defendants were all arrested for a traffic offense, were all searched and objected loudly, and asked for the names and badge numbers of the arresting officers.

The court in the *Wender* case (46 Ill.2d at p. 24), stated that "[w]hat is reasonable must always depend upon the particular case and therefore

must be left to determination on the facts and circumstances of each situation as it arises." Therefore, conduct that is reasonable in one set of circumstances may be quite unreasonable in other circumstances. Even if pinching a cheek is reasonable conduct in one situation, that same action might be unreasonable in an apartment where one has entered without invitation and carried on in an offensive manner. Under the circumstances of this case, the evidence strongly shows that the action of the defendant was unreasonable.

Defendant cites *City of Chicago v. Perez* (1970), 45 Ill.2d 258, 259 N.E.2d 4, and argues that he was convicted under the wrong provision and may have been guilty of a provision regulating "peeping toms."

The defendant was convicted on evidence relating to his behavior while in the complainant's apartment. His prior conduct was not an issue in the lower court. *City of Chicago v. Perez* was a sitdown strike by welfare recipients in a Cook County public aid office. This was passive conduct which did not tend to provoke a breach of the peace or imminent threat of violence.

In this case, it was only through the prudent action of the complainant that she managed to take advantage of the fortuitous arrival of the milkman on the scene to get the defendant out of the apartment without violence.

■■ The conduct of the defendant in entering the house of a young married woman uninvited and, once inside, trying to force his affections on her, asking for a kiss and pinching her cheek, and refusing to leave when asked several times was an unreasonable and offensive act which, under the circumstances, created a clear and present danger of a breach of the peace or imminent threat of violence.

■ The maximum sentence permissible under the Ordinance is a fine of $500. Defendant received a fine of $250, which, as he admits, "is not a severe punishment as punishments go."

Employing the standard set forth in *People v. Hicks* (1966), 35 Ill.2d 390, 397-98, 220 N.E.2d 461, 465, the Supreme Court of Illinois enunciated the requirements for granting a reduction in sentence:

"It has been observed frequently that where the punishment imposed is within the limits prescribed by the legislature, this court should not disturb it unless it is clear that the sentence constitutes a great departure from the spirit and purpose of the law or it is manifestly violative of the constitutional mandate requiring that all penalties must be proportioned to the nature of the offense." See also, *People v. Henderson* (1970), 119 Ill.App.2d 403, 411 and *People v. Zito* (1970), 120 Ill.App.2d 68, where sen-

tences were held proper under the same standard. Illinois Supreme Court Rule 615(b)(4).

The judgment of the circuit court is affirmed.

Affirmed.

BURMAN, P. J., and DIERINGER, J., concur.